## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### CASE NO.
3:13-CV-698-J-34TEM

---

RONALD GOODIN and DEBORAH GOODIN,

      Plaintiffs

vs.

TRS RECOVERY SERVICES, INC., BENNETT LAW PLLC, and WAL-MART STORES, INC.,

      Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

**INJUNCTIVE RELIEF SOUGHT**

---

### JURISDICTION

1.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2.    This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; and the Florida Consumer Collection Practices Act, §§ 559.55-559.785.

3.    Venue is proper in the Middle District of Florida because the acts and transactions occurred here, Plaintiffs reside here, and Defendants transact business here.

### PARTIES

4.    Plaintiff Ronald Goodin is a natural person who resides in the City of Jacksonville, County of Duval, State of Florida, and a person with standing to bring a claim under the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collections Practices Act ("FCCPA") by virtue of being directly affected by a violation of these Acts, to wit Plaintiff has been subjected to Defendants' illegal and improper debt collection activities.

5.     Plaintiff Deborah Goodin is a natural person who resides in the City of Jacksonville, County of Duval, State of Florida, and a person with standing to bring a claim under the FDCPA and the FCCPA by virtue of being directly affected by a violation of these Acts, to wit Plaintiff has been subjected to Defendants' illegal and improper debt collection activities.

6.     Defendant TRS Recovery Services, Inc. ("TRS"), is a foreign profit corporation, and at all times material, was registered to conduct business in Florida and provided debt collection services fore entities conducting business in Florida, and against consumers in the County of Duval, City of Jacksonville, State of Florida, by providing debt collection services for entities against consumers including against Plaintiffs.

7.     Defendant Bennett Law PLLC ("Bennett Law"), is a foreign limited liability company, and at all times material, provided debt collection services for entities conducting business in Florida, and against consumers in the County of Duval, City of Jacksonville, State of Florida, including against Plaintiffs.

8.     Defendant Wal-Mart Stores, Inc. ("Wal-Mart"), is a foreign profit corporation, and at all times material, was registered and conducting business in the County of Duval, City of Jacksonville, State of Florida, and engaged in improper debt collection activities against Plaintiffs in the same area.

## FACTUAL ALLEGATIONS

9.     On September 20, 2011, an unknown individual fraudulently, illegally, and improperly used Plaintiffs' checking account at Walmart Store #1082, 10991-1 San Jose Blvd., Jacksonville, Florida 32223, which store sent an electronic check #3798 for $586.36.

10.     This amount was pulled from Plaintiffs' Wells Fargo checking account.

11.    Plaintiffs went to their bank and reported the incident by providing the above-mentioned facts, and by showing that the check #3798 was never removed from Plaintiffs' checkbook.

12.    Wells Fargo investigated and determined that Plaintiffs did not authorize this transaction, and returned the $586.36 to Plaintiffs account.

13.    Plaintiffs account was closed thereafter.

14.    Although Plaintiffs are not yet privy to such a communication, Plaintiffs believe that Wells Fargo notified Wal-Mart of the reason that the money was being returned to Plaintiffs' account—because the check was tendered fraudulently, and not by the Plaintiffs.

15.    Wells Fargo issued two letters to Plaintiffs—one letter explaining the result of the investigation of the fraudulent check, the other letter for the Plaintiffs to use in providing an explanation to Wal-Mart that the check for $586.36 was a result of fraudulent activity, and was not tendered by Plaintiffs. A copy of these letters is attached as Composite "Exhibit A."

16.    On October 2, 2011, Walmart Store #1219, 12100 Lem Turner Rd., Jacksonville, Florida 32218, sent two more electronic checks—one for $95.62 and the other for $249.38. These checks were fraudulently tendered, and were not tendered by Plaintiffs.

17.    These checks did not go through, however, because the account was closed.

18.    Plaintiffs believe Wal-Mart knew these checks were fraudulently tendered, and not tendered by Plaintiffs, by way of Wells Fargo's notification regarding the first fraudulent check.

19.    Plaintiffs made statements to police regarding the incidents, for which a police report was made. In this police report, Mr. Goodin is recorded as stating he has tried to explain the illegal use of his account to the collections agency, and that his bank representative also tried

to talk to the collections agency, but they continued to demand payment. The police report is attached as "Exhibit B."

20.     On or about October 9, 2011, TRS mailed a debt collection letter to Plaintiffs for an amount of $611.36, comprised of the $586.36 amount of the first fraudulent check, and a $25.00 returned check fee. The letter explained that TeleCheck, a TRS affiliate, purchased this debt from Wal-Mart.

21.     On or about October 12, 2011, TRS mailed two more collection letters to Plaintiffs similar to the previous letter. One letter was for an amount of $120.62, comprised of the $95.62 fraudulent check amount, and a $25.00 returned check fee. The other letter was for an amount of $274.38, comprised of the $249.38 fraudulent check fee, and a $25.00 returned check fee.

22.     By letter dated October 21, 2011, Plaintiffs explained to Wal-Mart all of the facts laid out so far, and provided the letters from Wells Fargo that explained the fraudulent activity that occurred, and provided a copy of the police report regarding the incidents. The letter concluded, "Will you, please, correct this situation?" A copy of this letter was provided to TRS as well. A copy of the cover letter is attached as "Exhibit C."

23.     By three letters dated October 21, 2011, Plaintiffs disputed the validity of the each of the three debts for which TRS sent the above-mentioned collection letters. Along with these letters, Plaintiffs attached the explanation letter provided by Wells Fargo, and a copy of the above-mentioned police report. Copies of these three letters were provided to Wal-Mart. Copies of the cover letters are attached as Composite "Exhibit D."

24.     Despite Plaintiffs' dispute of the validity of the debt, TRS failed to validate the debt and continued to call and mail Plaintiffs regarding the un-owed debt.

25.     When TRS agents acted as if they were interested in helping Plaintiffs, TRS agent sought out personal information such as bank account numbers, social security numbers, and driver's license numbers, in an attempt to gain sufficient information about Plaintiffs to withdraw the un-owed funds from other accounts.

26.     Despite repeated attempts by Plaintiffs to explain to TRS the facts and circumstances laid out above—and despite failure to properly validate the debt—TRS continued to constantly call Plaintiff to the degree of harassment, oppression, and abuse.

27.     TRS continued to call Plaintiffs at least into July 2012.

28.     The last letter Plaintiffs received is dated November 13, 2012.

29.     TRS's letters that Plaintiffs received after disputing the validity of the debt contain the following statements, among others:  "THIS IS A DEMAND FOR THE BLAANCE IN FULL"; "WE FULLY INTEND TO RECOVER THE TOTAL AMOUNT DUE IN FULL"; and "If we do not receive the total amount due on this account within 15 days of the date of this Notice of Collection Agency Referral, your file will be referred to an outside collection agency for further collection activity as allowed by law."

30.     Further, Bennett Law was apparently retained by TRS, as stated in the letter from Bennett Law attached as "Exhibit E."

31.     Bennett Law is a collection agency, but it used a letter head that states, "Bennett Law A Professional Limited Liability Company."  In the letter Bennett Law refers to itself as "this firm," and refers to TRS as "our client."

32.     Bennett Law was obviously attempting to impersonate a law firm.

33.     Bennett Law's collection calls were even more egregious with respect to impersonating a law firm and attorneys.  The debt collectors held themselves out as attorneys.

34.     Despite Plaintiffs' repeated explanation of the facts and circumstances as laid out above, Bennett Law's calls continued to the degree of harassment, oppression, and abuse.

35.     Plaintiffs were under the impression that Bennett Law was a law firm, and the debt collectors were attorneys, until Plaintiffs researched Bennett Law on the internet and realized they were merely debt collectors.

36.     Bennett Law continued to call Plaintiffs at least into July 2012.

37.     Plaintiffs received a letter dated July 30, 2012, from the debt collector Allen & Associates.  The letter states that "TRS RECOVERY SERVICES, INC. has made numerous attempts to contact you to collect the total amount due on the above-referenced check.  They have now placed your delinquent account with Allen & Associates for collection."

38.     Because of all the facts described herein, Plaintiffs have been apprehensive about using checks to pay for anything for fear of TRS, or TRS's affiliate, TeleCheck gaining information about Plaintiffs' bank accounts and personal information, such that TRS would withdraw the un-owed money from Plaintiffs' accounts.

39.     Plaintiffs have not issued one check since the incidents described herein for fear of their financial security being damaged by actions of Wal-Mart, TRS, Bennett Law, Allen & Associates, and any other agency that the same might employ in attempting to collect this fraudulent and un-owed debt.

40.     Plaintiffs feel like their phone number belongs to debt collectors rather than to Plaintiffs as TRS and Bennett Law use their number freely despite Plaintiffs' attempts to thwart the collection attempts.

41.     Plaintiffs have suffered sleeplessness, lack of appetite, anxiety, depression, and other symptoms of emotional distress, stemming from the constant improper collection attempts.

## CAUSES OF ACTION

### COUNT I: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT—15 U.S.C. § 1692 *et seq.*

42.     Plaintiffs re-allege Paragraphs 1-41 here.

43.     Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692a(3), as they are natural persons allegedly obligated to pay a debt.

44.     The returned check amounts that TRS and Bennett Law are attempting to collect is a "debt" within the meaning of section 15 U.S.C. § 1692a(5), as TRS's and Bennett Law's collection letters and calls involve an alleged obligation of a consumer to pay money arising out of a transaction in which money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes.

45.     TRS and Bennett Law are "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6), to wit TRS and Bennett Law used the mail in a business the principal purpose of which was to collect debt; regularly collect or attempt to collect debts asserted to be due to another.

46.     TRS repeatedly and continuously violated § 1692g(b) by continuing collection efforts without validating the debt, in response to Plaintiff's three letters dated October 21, 2011, which disputed the validity of the debts that TRS claimed due in its collection letters dated October 9, 2011, and October 12, 2011.

47.     TRS repeatedly and continuously violated § 1692e(2) by misrepresenting the character, amount, and legal status of the alleged debt when it continued attempting to collect the un-owed debt despite Plaintiffs' provision of documents regarding fraudulent activity and despite Plaintiffs' repeated explanation of the circumstances; and when it referred the matter out to Bennett Law; and when it referred the debt out to Allen & Associates. Despite knowledge that Plaintiffs did

not owe this money, TRS continued to collect and referred the matter out to other debt collectors as if the money was actually owed.

48.     TRS repeatedly and continuously violated § 1692e(8) by communicated false credit information, including the failure to communicate that a debt is disputed when it referred the matter to Bennett Law and Allan & Associates, despite Plaintiffs' written dispute of the validity of the debt.

49.     TRS repeatedly and continuously violated § 1692e(10) by using false representations and deceptive means to collect a debt or obtain information about Plaintiffs when TRS agents sought personal information from Plaintiffs such as bank account numbers, social security numbers, and driver's license numbers, in an attempt to withdraw the un-owed funds from other accounts, while acting as if the information was sought to help Plaintiffs.

50.     TRS repeatedly and continuously violated § 1692d(5) by causing the phone to ring and engaging Plaintiffs in phone conversations repeatedly to the degree of harassment, oppression, and abuse.

51.     Bennett Law repeatedly and continuously violated § 1692d(5) by causing the phone to ring and engaging Plaintiffs in phone conversations repeatedly to the degree of harassment, oppression, and abuse.

52.     Bennett Law repeatedly and continuously violated § 1692d(6) by placing phone calls without disclosing the identity of the person calling when the person calling would misrepresent his identity.

53.     Bennett Law repeatedly and continuously violated § 1692e(2) by misrepresenting the character, amount, or legal status of the alleged debt by attempting to collect a debt that Bennett Law knew was reasonably disputed, fraudulent, and un-owed.

54.     Bennett Law repeatedly and continuously violated §§ 1692e(3), (10) by misrepresenting that letters and calls from Bennett Law agents were from a law firm and attorneys, when the letters and calls were from a debt collector.

55.     As a result of TRS's and Bennett Law's actions, Plaintiffs have suffered sleeplessness, lack of appetite, anxiety, depression, and other symptoms of emotional distress, stemming from TRS's and Bennett Law's constant improper collection attempts.

56.     Plaintiffs have incurred actual damages and Plaintiffs have incurred attorney's fees and costs in pursuing this action.

**Trial by Jury**: Plaintiffs are entitled to and hereby respectfully demand a trial by jury on all issues so triable. U.S. Const. amend. 7; Fed. R. Civ. P. 38; Fla R. Civ. P. 1.430.

### COUNT II: VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT—§§ 559.55-.785, FLA. STAT ("FCCPA")

57.     Plaintiffs re-allege Paragraphs 1-41 here.

58.     At all times material, pursuant to section 559.55(2), Florida Statutes, Plaintiffs were "consumers," as Plaintiffs were natural persons allegedly obligated to pay a debt that arises out of a non-existent default, and thus fees and charges that are not owed.

59.     The returned check amounts that Wal-Mart, TRS, and Bennett Law ("Defendants") are attempting to collect is a "consumer debt" within the meaning of section 559.55(1), as Defendants' improper collection activities address an alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes.

60.     Wal-Mart violated section 559.72(5) by disclosing to a person other than the debtor information affecting the debtor's reputation with knowledge or reason to know that the information was false when it sold the subject debt to TRS despite being put on notice by Wells

Fargo that the funds for the fraudulent check in the amount of $586.36 were being returned to Plaintiffs' account because the check was not authorized by Plaintiffs.

61.     Wal-Mart violated section 559.72(6) by disclosing information concerning the existence of a debt known to be reasonably disputed by the debtor without disclosing that fact when it sold the subject debt to TRS despite being put on notice by Wells Fargo that the funds for the fraudulent check in the amount of $586.36 were being returned to Plaintiffs' account because the check was not authorized by Plaintiffs.

62.     Wal-Mart further violated section 559.72(6) by failing to reveal to TRS that the debt sold to TRS was thereafter reasonably disputed by Plaintiffs in writing when Plaintiff wrote Wal-Mart the letter dated October 21, 2011, which provided the letters from Wells Fargo explaining the fraudulent activity, and which provided the police reports created from Plaintiffs' statements.

63.     Wal-Mart violated section 559.72(9) by attempting to enforce a debt when Wal-Mart knew the debt was not legitimate—or by asserting the non-existent right of the ability to sell an un-owed, fraudulent debt—by selling the debt to TRS despite Wells Fargo informing Wal-Mart that the funds for the fraudulent check in the amount of $586.36 were being returned to Plaintiffs' account because the check was not authorized by Plaintiffs.

64.     TRS violated section 559.72(5) by disclosing to a person other than the debtor information affecting the debtor's reputation with knowledge or reason to know that the information was false when referred the matter to Bennett Law and Allen & Associates, despite receiving letters from Plaintiffs that disputed the validity of the debt, that provided Wells Fargo's explanation of the fraudulent activities from which this incident arose; and despite speaking to

Plaintiffs on the phone repeatedly about the same; and despite TRS's failure to properly validate the debt as required by the FDCPA.

65.     TRS violated section 559.72(6) by disclosing information concerning the existence of a debt known to be reasonably disputed by the debtor without disclosing that fact when it referred the matter to Bennett Law and Allen & Associates, despite receiving letters from Plaintiffs that disputed the validity of the debt, that provided Wells Fargo's explanation of the fraudulent activities from which this incident arose; and despite speaking to Plaintiffs on the phone repeatedly about the same; and despite TRS's failure to properly validate the debt as required by the FDCPA.

66.     TRS violated section 559.72(7) by willfully communicating with Plaintiffs with such frequency, and by engaging in other conduct, as can reasonably be expected to harass Plaintiffs by repeatedly calling Plaintiffs despite Plaintiffs' repeated assertion of their position that the subject debt was not owed, to the extent that Plaintiffs were apprehensive about answering or otherwise using their phone, and by disclosing information concerning the existence of a debt known to be reasonably disputed by the debtor without disclosing that fact when it referred the matter to Bennett Law and Allen & Associates.

67.     TRS violated section 559.72(9) by attempting to enforce a debt when TRS knew the debt was not legitimate—or by asserting the non-existent right of the ability to refer out an un-owed, fraudulent debt—by referring the debt to Bennett Law and Allen & Associates despite Plaintiffs' letters and phone conversations that disputed the validity of the debt, and despite not providing the proper debt validation as required by the FDCPA.

68.     Bennett Law violated section 559.72(7) by willfully communicating with Plaintiffs with such frequency, and by engaging in other conduct, as can reasonably be expected to harass Plaintiffs by repeatedly calling Plaintiffs despite Plaintiffs' repeated assertion of their position that

the subject debt was not owed, to the extent that Plaintiffs were apprehensive about answering or otherwise using their phone, and by misrepresenting itself as attorneys and a law firm.

69.     Bennett Law violated section 559.72(9) by attempting to enforce a debt when Bennett Law knew the debt was not legitimate when it had knowledge from TRS and from Plaintiffs that Plaintiffs disputed the debt as per the FDCPA and by providing letters from Wells Fargo and a police report that memorialized the circumstances.

70.     Bennett Law violated section 559.72(10) by using communication that gave the appearance that the communication was authorized, issued, or approved by an attorney at law, when it was not, by Bennett Law agents' representations that they were attorneys and by Bennett Law's initial letter made to appear like it was from a law firm.

71.     Bennett Law violated section 559.72(12) by orally communicating with Plaintiffs in a manner that gave the false impression or appearance that such person is associated with an attorney when Bennett Law agents represented that they were attorneys.

72.     As a result of Defendants' actions, Plaintiffs have suffered sleeplessness, lack of appetite, anxiety, depression, and other symptoms of emotional distress, stemming from Defendants' improper collection attempts.

**Trial by Jury**:  Plaintiffs are entitled to and hereby respectfully demand a trial by jury on all issues so triable.  U.S. Const. amend. 7; Fed. R. Civ. P. 38; Fla R. Civ. P. 1.430.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that:

a) judgment be entered against TRS and Bennett Law for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) for each Plaintiff; an award of actual and punitive damages, and for an award of litigation costs and reasonable attorney's fees pursuant

to 15 U.S.C. § 1692k(a)(3); injunctive and declaratory relief regarding further collection attempts; and all other relief to which Plaintiffs are entitled; and

b) judgment be entered against each and every Defendant for an award of statutory damages of $1,000.00 pursuant to Florida Statutes § 559.77(2) for each Plaintiff and for each violation of the statute; for an award of actual and punitive damages, and for an award of litigation costs and reasonable attorney's fees for each Plaintiff; injunctive and declaratory relief regarding further collection attempts; and any and all other relief to which Plaintiffs are entitled.

Respectfully submitted,

**PARKER & DUFRESNE, P.A.**

\s Austin Brown
Austin Brown, Esquire
Florida Bar Number: 96633
8777 San Jose Blvd., Ste. 301
Jacksonville, Florida 32217
Tel: (904)733-7766; Fax: (904)733-2919
abrown@jaxlawcenter.com

**Trial Counsel for Plaintiffs**

## VERIFICATION OF COMPLAINT

Under the penalties of perjury, Plaintiff Ronald Goodin states as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Ronald Goodin

## VERIFICATION OF COMPLAINT

Under the penalties of perjury, Plaintiff Deborah J. Goodin states as follows:

8. I am a Plaintiff in this civil proceeding.
9. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
10. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
11. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
12. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
13. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
14. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

_Deborah J. Goodin_
Deborah J. Goodin